**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 24 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LUCAS BURWELL; et al.,<br><br>    Plaintiffs-Appellants,<br><br>  v.<br><br>PORTLAND SCHOOL DISTRICT NO. 1J, by and through the Portland School Board, an Oregon public school entity; GUADALUPE GUERRERO, in his official capacity as Superintendent of Portland School District No. 1J,<br><br>    Defendants-Appellees. | No.   20-35499<br><br>D.C. No. 3:19-cv-00385-JR<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted May 4, 2021
Portland, Oregon

Before:  W. FLETCHER and FRIEDLAND, Circuit Judges, and BLOCK,[**] District Judge.

Prompted by the shooting at Marjory Stoneman Douglas High School in

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

Parkland, Florida, Portland School District No. 1J (the "School District") began to support gun-control policies.[1] As relevant here, the School District decided to support nationwide school "walkouts" intended to promote such policies. The School District organized and promoted walkouts at Portland schools using paid staff time, and provided school resources such as posterboard. The walkouts occurred during a special "protest period" that the School District created, and students were expected to participate in these demonstrations unless they affirmatively opted out. Students who opted out were not punished by the School District, but they experienced bullying and social ostracism from their peers. The School District took no action in response to parents' complaints about the bullying.

A group of parents and students (collectively, "Plaintiffs") brought this lawsuit under 42 U.S.C. § 1983, claiming that the School District's actions violated the First Amendment in two ways. First, Plaintiffs contend that the School District misused public funds to support pro-gun-control political advocacy, thereby compelling them (in their capacity as local taxpayers) to subsidize speech with which they disagree. Second, Plaintiffs contend that the School District compelled

---

[1] Because this is an appeal from a ruling on a motion to dismiss, we treat the allegations in the operative Complaint as true. We also grant Plaintiffs' motions to supplement the record on appeal (Dkts. 33 & 39) and consider those supplemental documents.

students to speak in support of its preferred message on gun control, including by participating in the demonstrations. The district court dismissed both counts for failure to state a claim. Plaintiffs timely appealed, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.[2] We review de novo orders granting a motion to dismiss. *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1166 (9th Cir. 2021).

    1. We begin by considering Plaintiffs' standing to assert a compelled-subsidy claim. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press."). We may not decide the merits of this claim unless we have subject-matter jurisdiction, which requires Plaintiffs to establish Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 102-04 (1998).

    Although a federal or state taxpayer generally does not have Article III standing to challenge an alleged misuse of public funds, local taxpayers may have standing "to enjoin the illegal use of the moneys of a municipal corporation." *DaimlerChrysler*, 547 U.S. at 349 (quotation marks omitted). But municipal taxpayer standing is limited to "good-faith pocketbook action[s]." *Doremus v. Bd.*

---

    [2] Although the district court never explicitly disposed of another claim in the Complaint relating to Oregon's public records law, Plaintiffs have represented that they abandoned that claim and that they have waived any right to seek relief on it. We accept these representations as true, which makes the judgment a final decision. *See Lovell v. Chandler*, 303 F.3d 1039, 1049 (9th Cir. 2002).

*of Educ.*, 342 U.S. 429, 434 (1952); *see Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991) ("[T]he *Doremus* requirement of a pocketbook injury applies to municipal taxpayer standing.").

To satisfy this requirement, taxpayers challenging educational expenditures cannot merely identify "ordinary costs . . . that the school would pay whether or not" it engaged in the challenged conduct. *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 794 (9th Cir. 1999) (en banc); *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 74 (2d Cir. 2001) (holding that the mere use of paid staff time for a challenged school activity cannot confer municipal taxpayer standing), *cited with approval in PLANS, Inc. v. Sacramento City Unified Sch. Dist.*, 319 F.3d 504, 507-08 (9th Cir. 2003). Instead, "the taxpayer must demonstrate that the government spends 'a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of.'" *Madison Sch. Dist.*, 177 F.3d at 794 (quoting *Doremus*, 342 U.S. at 434).

Here, the Complaint only alleges expenditures in the form of "ordinary costs" associated with operating the School District. Plaintiffs computed the relevant expenditure by dividing the School District's annual budget by the number of scheduled class days and then multiplying the resulting daily budget by an estimated four days of lost "staff and instruction time." This methodology fails to demonstrate any measurable appropriation because it does not indicate that any

spending is attributable solely to the School District's support of the demonstrations. At oral argument, counsel confirmed that the Complaint did not allege that the School District expended additional resources on the challenged conduct, but rather used staff time and supplies that would have been school expenditures even without the demonstrations. As a result, we conclude that the allegations are "legally indistinguishable from *Doremus*, in which the school's expenditures for teachers' salaries, equipment, building maintenance, and the like were insufficient to confer taxpayer standing." *Id.* Plaintiffs' "grievance . . . is not a direct dollars-and-cents injury," but rather an ideological dispute about the content of the school day. *Doremus*, 342 U.S. at 434. Plaintiffs therefore lack municipal taxpayer standing to pursue this claim.

    We vacate in part the district court's decision and remand with instructions to dismiss the compelled-subsidy claim without prejudice for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice.").

    2. By contrast, Plaintiffs have standing to assert a compelled-speech claim. The Complaint does not specifically state that any student Plaintiff participated in the protest or otherwise engaged in expressive conduct contrary to her beliefs. Nonetheless, drawing all inferences in Plaintiffs' favor, we assume that at least one

5

student Plaintiff participated in the protest despite not agreeing with its message. This suffices to establish standing. *See generally Ctr. for Biological Diversity v. Barnhardt*, 946 F.3d 553, 560 (9th Cir. 2019) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Nonetheless, the Complaint fails to state a compelled-speech claim because Plaintiffs have not alleged any government compulsion to speak. The First Amendment "prohibits the government from telling people what they must say." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 61 (2006). Here, however, the Complaint did not allege any "specific regulatory, proscriptive or compulsory actions" attributable to the School District, as Plaintiffs have conceded. The School District permitted students to opt out of participating in the demonstration without official repercussions. To the extent that the School District encouraged students to voluntarily participate in the protests, it engaged in "teaching 'by persuasion and example,'" which does not support a compelled-speech claim. *Tennison v. Paulus*, 144 F.3d 1285, 1288 (9th Cir. 1998) (quoting *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 640 (1943)).

The alleged peer pressure to participate in the protests did not constitute government compulsion. Although the Supreme Court has considered peer pressure as a form of indirect coercion in its analysis of an Establishment Clause

case, *Lee v. Weisman*, 505 U.S. 577, 592-93 (1992), that reasoning does not apply to claims arising under the Speech Clause.  *See Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1039 (9th Cir. 2010) ("*Lee*'s indirect psychological coercion analysis, by its own terms, applies only to religion or to religious exercises.").

In seeking to secure an appealable final judgment, Plaintiffs have already declined to amend the Complaint.  Dismissal with prejudice was therefore proper.  We affirm the district court's judgment as to the compelled-speech claim.

**AFFIRMED IN PART AND VACATED IN PART; REMANDED WITH INSTRUCTIONS.**[3]

---

[3] Each party shall bear its own costs.  *See* 9th Cir. G.O. 4.5(e).